THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PATRICK WILLIAMS, Also Known as PATRICK BLAKE, Respondent.

First Department, October 23, 1990

## APPEARANCES OF COUNSEL

*Peter D. Coddington (Robert T. Johnson, District Attorney,* attorney), for appellant.

*Steven R. Bernhard* for respondent.

## OPINION OF THE COURT

WALLACH, J.

Scarcely a day goes by in New York City without a handgun shooting where an innocent bystander, all too often a child, is either maimed or killed. Aware of this tragic menace, the State Legislature has enacted a statute requiring mandatory incarceration for those who carry unlicensed, loaded handguns outside their home or place of business. As Governor Carey explained in signing the bill: "We must bring an end to the proliferation of illegal handguns in New York and the intolerable assaults on law enforcement officers and law-abiding citizens. We must let it be known that New York has the toughest gun law in the country and that it will be strictly enforced. We are determined to rid our streets of those who would do violence to its citizens." (Governor's approval mem, 1980 NY Legis Ann, at 107.)

Narrow exceptions to mandatory imprisonment were simultaneously crafted essentially for the benefit of first offenders who fit special criteria, but for this defendant, who pleaded guilty first to carrying a nine millimeter, allegedly defaced, automatic weapon (outgunning the standard police issue), and, while out on bail for that offense, was arrested and pleaded guilty to possessing a .38 caliber revolver in the company of

another man similarly armed, with both weapons showing evidence of recent discharge, those exceptions together with their probationary options should have been firmly rejected by the sentencing court. While we are sensitive to our limited role upon sentence review (see, People v Felix, 58 NY2d 156, 161), we express these views confident that the sentencing court will give them proper deference if the defendant chooses not to withdraw his pleas and the foregoing facts are satisfactorily established. As one Lord Chief Justice of England expressed it with respect to the imposition of the gravest sentence of all: "though my Nature prompt me to Pity; yet to consider that there is also a Pity due to the Country".*

In any case the probationary sentences imposed by the sentencing court must be vacated for legal error.

A person convicted of possessing an unlicensed, loaded firearm outside of his home or place of business (Penal Law § 265.02 [4]) must be sentenced to an indeterminate sentence of at least 1 to 3 years in prison, or, in the alternative, a definite sentence of no less than one year in prison (Penal Law § 70.02 [2] [c]). There are, however, two exceptions to this mandated sentence, the first applicable to persons who have not been previously convicted of a class A misdemeanor in the five years immediately preceding the commission of the gun possession offense, and the second to persons who have. As for those who have not been so convicted, "the court may impose any other sentence authorized by law * * * if the court having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that [the mandated minimum] sentence would be unduly harsh" (Penal Law § 70.02 [2] [c] [i]). As for those who do have a class A misdemeanor prior, the court may impose a lesser sentence "if it finds that one or more of the following factors exist: (i) mitigating circumstances that bear directly on the manner in which the crime was committed; or (ii) where the defendant was not the sole participant in the crime, the defendant's participation was relatively minor although not so minor as to constitute a defense to the prosecution; or (iii) possible deficiencies in proof of the defendant's commission of an armed felony" (Penal Law § 70.02 [2] [c] [ii]; [5] [b]). The difference between the two exceptions is that the defendant's

---

* Sir Matthew Hale, Lord Chief Baron of the Exchequer 1660-1671, Lord Chief Justice of England 1671-1676, in "Things Necessary to be had in Remembrance".

"history and character" may be considered as a mitigating circumstance justifying a sentence less than the prescribed minimum only if he does not have a class A misdemeanor prior; if he does have a class A misdemeanor prior, the mitigating circumstances are limited to the manner in which the crime was committed and possible deficiencies in the People's proof thereof (see, People v Felix, supra, at 163). It is also part of the statutory scheme that a person charged with possessing a loaded firearm outside of his home or place of business may plead to criminal possession of a weapon in the fourth degree, a class A misdemeanor (Penal Law § 265.01 [1]), only if he has not been convicted of a class A misdemeanor in the five-year period preceding the gun possession offense (CPL 220.10 [5] [d] [iii]); if he has been so convicted, he may not plead below the class E violent felony offense of attempted criminal possession of a weapon in the third degree (CPL 220.10 [5] [d] [iv]). The effect of these interlocking provisions is to afford a first-offender gun possessor one chance to license his gun and avoid jail by showing good character (see, mem of Assemblyman Melvin H. Miller, 1980 NY Legis Ann, at 105). If he misses that chance, and is convicted for possession of a loaded firearm a second time within a five-year period, he must go to jail unless he can show one of the three mitigating factors set out in subdivision (5) (b) of Penal Law § 70.02. Convicted a third time within a five-year period, the statute would appear to require that he go to jail for at least a year, no further questions asked.

While serving in New York a three-year sentence of probation imposed by a New Jersey court for marihuana possession, defendant was stopped by the police with a fully loaded "nine millimeter" automatic pistol in his possession, and charged with two counts of unlawful possession of a weapon in the third degree (Penal Law § 265.02 [4] [loaded firearm possessed outside of the home or place of business]; § 265.02 [3] [possession of a firearm that has been defaced for purposes of concealment]) and one count of resisting arrest (Penal Law § 205.30). Released on $1,000 bail, he was arrested three months later, this time with a fully loaded ".38 caliber Amadeo Rossi revolver" in his possession, and, along with a companion, a predicate felon who was carrying his own loaded ".38 Special Colt" revolver when the two were arrested together, charged in a second indictment with possession of a loaded firearm.

Defendant filed suppression motions in both proceedings,

but withdrew them as part of a plea bargain covering both indictments. The court, noting that the presumptive minimum sentence for possession of a loaded firearm is a year in prison, nevertheless offered to dispose of both indictments with a "split" sentence of six months in prison and 4½ years' probation, indicating that a year in prison would be "unduly harsh" in view of defendant's "background, lack of a prior felony conviction, [and] the fact that he is working." Defendant accepted the offer by pleading guilty to twice possessing a loaded firearm outside of his home or place of business, but the People, when asked by the court if the pleas were acceptable to them, stated only that they would have been prepared to prove their cases against defendant had they gone to trial. The court then indicated that the pleas were acceptable to it, and adjourned the cases for sentencing.

At sentencing, the People objected to the promised split sentence as illegal, arguing that defendant's conviction in New Jersey for marihuana possession disqualified him from receiving a mitigated sentence under the "unduly harsh" exception of Penal Law § 70.02 (2) (c) (i). The court, somewhat nettled that the People were, as it thought, reneging on a plea bargain, nevertheless appeared to accept that, as a technical matter, the New Jersey conviction did have the effect urged by the People; however, it then proceeded to sentence defendant (without the People's consent, though they do not make a point of that) to two concurrent terms of five years' probation in satisfaction of both indictments (see, Penal Law § 65.00 [3] [a] [i]), indicating that such was authorized under subdivision (5) (b) (iii) by reason of possible police misconduct in their two encounters with defendant, and justified in view of a probation report recommending "intensive supervision" in preference to incarceration. The People appeal, arguing that the sentencing court committed an error of law in deeming possible police misconduct to be a mitigating factor, and, on the assumption that mitigating factors are absent, the People urge that two consecutive sentences of at least 1 to 3 years in prison would be appropriate but appear to accept that a definite sentence of one year in prison would be legal.

The record, of course, is devoid of any evidence bearing on police misconduct and the suppressability of the guns, as neither a suppression hearing nor a mitigation hearing pursuant to Penal Law § 70.02 (5) (c) was held. The court's finding of possible police misconduct was instead based on off-the-record discussions the substance of which was the subject of some

sharp on-the-record exchanges between the court and the People after the latter made plain their objection to the split sentence. But the People's argument on appeal goes quite beyond this gap in the record, and the fact that it was caused by defendant's voluntary withdrawal of his suppression motions in consideration of the split sentence promised him by the court. Without conceding that the two police encounters with defendant were unlawful, and indeed devoting a fair part of their argument to the reasons why the stops of defendant were justified, the People's main point on appeal assumes, arguendo, that the guns found on defendant would have been suppressed, and argues that the sentencing court committed an error of law in deeming such a possibility a mitigating factor under subdivision (5) (b) (iii). We agree.

Plainly read, subdivision (5) (b) (iii), which speaks of "possible deficiencies in proof of the defendant's commission of an armed felony", does not suggest that possession of a loaded firearm is ameliorated by possible police misconduct in seizing it. As defined in CPL 1.20 (41), an "armed felony" is a violent felony offense aggravated by use of a loaded firearm or display of what appears to be a firearm (see, People v Felix, supra, 58 NY2d, at 162). We question whether the mere possession of a firearm fits within this definition, and thus whether subdivision (5) (b) (iii) can ever operate to mitigate mere possession, but if circumstances are conceivable where a defendant will be permitted to show "possible deficiencies" in the People's proof of possession, police misconduct should not be among them. Other remedies besides sentence mitigation are available to deter police misconduct, including suppression of evidence (CPL art 710) or dismissal of the indictment should the misconduct be "exceptionally serious" (CPL 210.40 [1] [e]). Surely the Legislature could not have intended sentence mitigation to be an additional remedy for police misconduct in the context of a sentencing statute the very purpose of which is to enhance the penalty for gun possession and other violent felonies aggravated thereby. In deciding that possible police misconduct should not be deemed a mitigating factor, we would also note precedent that suppressed evidence is not necessarily to be disregarded for purposes of sentencing (see, People v Felix, supra, at 164 ["offenses charged in dismissed counts of an indictment may be considered by the sentencing Judge"]; People v Estenson, 101 AD2d 687).

Were the imposition of a mitigated sentence pursuant to subdivision (5) (b) the only error, we would likely remand with

instructions to the sentencing court to impose either an indeterminate sentence of at least 1 to 3 years, or a definite sentence of no less than one year, as required by subdivision (2) (c), but not before giving defendant an opportunity to withdraw his pleas. Such a result, however, is problematic in the absence of proof that defendant's conviction in New Jersey for marihuana possession would have been a class A misdemeanor if committed in New York *(see generally,* Penal Law art 221, under which possession of marihuana does not rise to the level of a class A misdemeanor unless the amount possessed is at least two ounces), and defendant's argument on appeal, not addressed by the People, that all involved in the sentencing proceeding simply assumed, incorrectly, that such was the case. In other words, absent proof that defendant's New Jersey conviction was based on his possession of at least two ounces of marihuana, we are constrained to accept, at least for purposes of this appeal, the possibility that defendant does qualify for a mitigated sentence under the "unduly harsh" exception of subdivision (2) (c) (i), and therefore remand to the sentencing court with instructions that, unless the People come forward with such proof, it is not precluded as a matter of law from invoking that provision should it be so inclined. There are, however, several provisos.

As noted, at the plea proceeding, before the People plainly stated their objection to the promised sentence of six months in prison and 4½ years' probation, the sentencing court indicated that it was of the opinion that the mandated minimum sentence would be unduly harsh. If on remand the sentencing court continues to be of that opinion notwithstanding defendant's admitted possession of a loaded firearm while on bail for having committed the same crime, it should, before opting for a mitigated sentence, adjudicate, or at least assume as true, the People's assertions that the first gun was defaced, that the second was reported stolen, that both guns showed evidence of discharge, and that defendant resisted when arrested on the first gun possession charge. Also relevant for purposes of any "unduly harsh" inquiry would be defendant's motives or reasons for carrying the firearms, should the People bring proof to bear on that subject, the type of weaponry found in defendant's possession, and the fact that defendant's companion was also carrying a loaded firearm.

While this court can direct the sentencing court to adjudicate relevant facts, and even indicate its disagreement with the sentencing court's exercise of discretion, we may not,

absent an error of law, interfere with that discretion so as to increase a sentence. Absent an error of law, a sentence can be upset by an intermediate appellate court only if it is unduly harsh (CPL 450.30 [1]); no comparable authority exists to upset a sentence that is, as it were, unduly lenient (CPL 450.30 [2]).

Accordingly, the judgment of the Supreme Court, Bronx County (Bonnie Wittner, J.), rendered on September 26, 1989, convicting defendant, upon his pleas of guilty, of criminal possession of a weapon in the third degree, and sentencing him to two concurrent terms of five years' probation, should be unanimously modified, on the law, to vacate the sentence, and to remand for resentencing with leave to defendant to withdraw his pleas if so advised, and otherwise affirmed.

Ross, J. P., ROSENBERGER, KASSAL and RUBIN, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on September 26, 1989, unanimously modified, on the law, to vacate the sentence, and to remand for resentencing with leave to defendant to withdraw his pleas if so advised, and otherwise affirmed.